## LANDLORD CONSENT TO SUBLEASE

**THIS LANDLORD CONSENT TO SUBLEASE** ("**Consent Agreement**") is entered into as of _____12·19_____, 2016, by and among **BRE RIVER NORTH POINT OWNER LLC**, a Delaware limited liability company ("**Landlord**"), **ROCKET FUEL INC.**, a Delaware corporation ("**Sublandlord**"), and **NITEL, INC.**, an Illinois corporation ("**Subtenant**").

### RECITALS:

A. Landlord (as successor in interest to SRI Ten West Mart LLC, a Delaware limited liability company), as landlord, and Sublandlord, as tenant, are parties to that certain Office Lease dated February 19, 2014 ("**Original Lease**"), which Original Lease has been previously amended by that certain First Amendment to Lease dated April 4, 2014, by that certain Second Amendment dated June 21, 2016 and by that certain Third Amendment (the "**Third Amendment**") dated as of even date herewith (collectively, the "**Existing Lease**"). Pursuant to the Existing Lease, Landlord has leased to Sublandlord certain premises containing approximately **44,590** rentable square feet (the "**Premises**") comprised of approximately (i) 32,115 rentable square feet known as Suite No. 1300N located on the 13th floor, and (ii) 12,475 rentable square feet known as Suite No. 1350N located on the 13th floor of the building commonly known as River North Point located at 350 North Orleans Street, Chicago, Illinois 60654 (the "**Building**").

B. Sublandlord and Subtenant have entered into that certain sublease agreement dated November __ *[sic]*, 2016 attached hereto as **Exhibit A** (the "**Sublease**") pursuant to which Sublandlord has agreed to sublease to Subtenant certain premises described as follows: approximately **32,115** rentable square feet known as Suite No. 1300N located on the 13th floor of the Building (the "**Sublet Premises**") constituting a part of the Premises.

C. Sublandlord and Subtenant have requested Landlord's consent to the Sublease.

D. Landlord is willing to agree to give such consent upon the terms and conditions contained in this Consent Agreement.

**NOW THEREFORE**, in consideration of the foregoing recitals which by this reference are incorporated herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord hereby consents to the Sublease subject to the following terms and conditions, all of which are hereby acknowledged and agreed to by Sublandlord and Subtenant:

1. Sublease Agreement and Master Lease. Sublandlord and Subtenant hereby represent that a true and complete copy of the Sublease is attached hereto and made a part hereof as **Exhibit A**, and Sublandlord and Subtenant agree that the Sublease shall not be modified without Landlord's prior written consent, which consent shall not be unreasonably withheld. Notwithstanding anything to the contrary contained in the Sublease, all parties agree that the "Master Lease", as defined in the Sublease, shall be deemed to mean the Lease, as described in Recital A above. Landlord agrees that its obligation to pay for relocation costs of Tenant pursuant to the Third Amendment shall include such relocation costs of both Tenant and Subtenant.

1. Representations. Sublandlord hereby represents and warrants that Sublandlord (i) has full power and authority to sublease the Sublet Premises to Subtenant, (ii) has not

transferred or conveyed its interest in the Lease to any person or entity collaterally or otherwise, and (iii) has full power and authority to enter into the Sublease and this Consent Agreement. Subtenant hereby represents and warrants that Subtenant has full power and authority to enter into the Sublease and this Consent Agreement.

2. Indemnity and Insurance. Subtenant hereby assumes, with respect to Landlord, all of the indemnity and insurance obligations of the Sublandlord under the Lease with respect to the Sublet Premises, provided that the foregoing shall not be construed as relieving or releasing Sublandlord from any such obligations.

3. No Release. Nothing contained in the Sublease or this Consent Agreement shall be construed as relieving or releasing Sublandlord from any of its obligations under the Lease, it being expressly understood and agreed that Sublandlord shall remain liable for such obligations notwithstanding anything contained in the Sublease or this Consent Agreement or any subsequent assignment(s), sublease(s) or transfer(s) of the interest of the tenant under the Lease. Sublandlord shall be responsible for the collection of all rent due it from Subtenant, and for the performance of all the other terms and conditions of the Sublease, it being understood that Landlord is not a party to the Sublease and, notwithstanding anything to the contrary contained in the Sublease, is not bound by any terms, provisions, representations or warranties contained in the Sublease and is not obligated to Sublandlord or Subtenant for any of the duties and obligations contained therein.

4. Processing Costs. Landlord hereby waives the Processing Costs described in Section 13.b. of the Original Lease payable by Sublandlord in connection with this Consent Agreement and the related Sublease. This waiver in no manner shall be deemed to apply to any subsequent transfers unless such waiver is specifically agreed to by Landlord in writing at the time of such subsequent transfer.

5. No Transfer. Subtenant shall not further sublease the Sublet Premises, assign its interest as the Subtenant under the Sublease or otherwise transfer its interest in the Sublet Premises or the Sublease to any person or entity without the written consent of Landlord, which Landlord may shall not unreasonably withhold, except that Landlord's consent may be withheld in Landlord's sole and absolute discretion if the proposed assignment or subletting would result in more than 3 subleases or sub-subleases being in effect with respect to the Premises or any portion thereof at any given time (assuming for such purposes that all renewal or extension options under all subleases will be exercised). Subtenant agrees to comply with all of the provisions of the Lease, and Landlord may enforce the Lease provisions directly against Subtenant. Subtenant agrees to be and remain jointly and severally liable with Sublandlord for the payment of rent pertaining to the Sublet Premises in the amount set forth in the Sublease, and for the performance of all of the terms and provisions of the Lease applicable to the Sublet Premises.

6. Lease. The parties agree that the Sublease is subject and subordinate to the terms of the Lease, and all terms of the Lease, other than Sublandlord's obligation to pay Monthly Rent, are incorporated into the Sublease. In no event shall the Sublease or this Consent Agreement be construed as granting or conferring upon the Sublandlord or the Subtenant any greater rights than those contained in the Lease nor shall there be any diminution of the rights and privileges of the Landlord under the Lease, nor shall the Lease be deemed modified in any respect. Without limiting the scope of the preceding

sentence, any construction or alterations performed in or to the Sublet Premises shall be performed with Landlord's prior written approval and in accordance with the terms and conditions of the Lease. It is hereby acknowledged and agreed that any provisions in the Sublease which limit the manner in which Sublandlord may amend the Lease are binding only upon Sublandlord and Subtenant as between such parties. Landlord shall not be bound in any manner by such provisions and may rely upon Sublandlord's execution of any agreements amending or terminating the Lease subsequent to the date hereof notwithstanding any contrary provisions in the Sublease. Neither the Lease, or the Sublease or this Consent Agreement shall be deemed, to grant the Subtenant any rights whatsoever against Landlord. Subtenant hereby acknowledges and agrees that its sole remedy for any alleged or actual breach of its rights in connection with the Sublet Premises shall be solely against Sublandlord.

7. Parking and Services. Any parking rights granted to Subtenant pursuant to the Sublease shall be satisfied out of the parking rights, if any, granted to Sublandlord under the Lease. Sublandlord hereby authorizes Subtenant, as agent for Sublandlord, to obtain services and materials for or related to the Sublet Premises, and Sublandlord agrees to pay for such services and materials as additional Rent under the Lease upon written demand from Landlord. However, as a convenience to Sublandlord, Landlord may bill Subtenant directly for such services and materials, or any portion thereof, in which event Subtenant shall pay for the services and materials so billed upon written demand, provided that such billing shall not relieve Sublandlord from its primary obligation to pay for such services and materials.

8. Attornment. If the Lease or Sublandlord's right to possession thereunder terminates for any reason prior to the expiration of the Sublease, Subtenant agrees, at the written election of Landlord, to attorn to Landlord upon the then executory terms and conditions of the Sublease for the remainder of the term of the Sublease. In the event of any such election by Landlord, Landlord will not be (a) liable for any rent paid by Subtenant to Sublandlord more than one month in advance, or any security deposit or letter of credit paid by or delivered by Subtenant to Sublandlord, unless same has been transferred to Landlord by Sublandlord; (b) liable for any act or omission of Sublandlord under the Lease, Sublease or any other agreement between Sublandlord and Subtenant or for any default of Sublandlord under any such documents which occurred prior to the effective date of the attornment; (c) subject to any defenses or offsets that Subtenant may have against Sublandlord which arose prior to the effective date of the attornment; (d) bound by any changes or modifications made to the Sublease without the written consent of Landlord, (e) obligated in any manner with respect to the transfer, delivery, use or condition of any furniture, equipment or other personal property in the Sublet Premises which Sublandlord agreed would be transferred to Subtenant or which Sublandlord agreed could be used by the Subtenant during the term of the Sublease, or (f) liable for the payment of any improvement allowance, or any other payment, credit, offset or amount due from Sublandlord to Subtenant under the Sublease. If Landlord does not elect to have Subtenant attorn to Landlord as described above, the Sublease and all rights of Subtenant in the Sublet Premises shall terminate upon the date of termination of the Lease or Sublandlord's right to possession thereunder. The terms of this Section 9 supercede any contrary provisions in the Sublease.

9. Payments Under the Sublease. If at any time Sublandlord is in default under the terms of the Lease beyond the expiration of any applicable notice and cure periods, Landlord shall have the right to contact Subtenant and require Subtenant to pay all rent due under

the Sublease directly to Landlord until such time as Sublandlord has cured such default. Subtenant agrees to pay such sums directly to Landlord if requested by Landlord, and Sublandlord agrees that any such sums paid by Subtenant shall be deemed applied against any sums owed by Subtenant under the Sublease. Any such sums received by Landlord from Subtenant shall be received by Landlord on behalf of Sublandlord and shall be applied by Landlord to any sums past due under the Lease, in such order of priority as required under the Lease or, if the Lease is silent in such regard, then in such order of priority as Landlord deems appropriate. The receipt of such funds by Landlord shall in no manner be deemed to create a direct lease or sublease between Landlord and Subtenant. If Subtenant fails to deliver its Sublease payments directly to Landlord as required herein following receipt of written notice from Landlord as described above, then Landlord shall have the right to remove any signage of Subtenant, at Subtenant's cost, located outside the Premises or in the Building lobby or elsewhere in the Building and to pursue any other rights or remedies available to Landlord at law or in equity.

10. Excess Rent. If Landlord is entitled to any excess rent (defined below) from Sublandlord pursuant to the terms of the Lease, then, in addition to all rent otherwise payable by Sublandlord to Landlord under the Lease, Sublandlord shall also pay to Landlord the portion of the excess rent to which Landlord is entitled under the Lease, in the manner described in the Lease. As used herein, the "excess rent" shall be deemed to mean any payments from Subtenant under the Sublease which exceed the payments payable by Sublandlord to Landlord under the Lease for the Sublet Premises. Landlord's failure to bill Sublandlord for, or to otherwise collect, such sums shall in no manner be deemed a waiver by Landlord of its right to collect such sums in accordance with the Lease.

11. Compliance with Executive Order 13224. Sublandlord and Subtenant each, respectively, hereby represents, warrants, and covenants to Landlord throughout the term of the Sublease as follows: that (i) it is not, and is not acting for the benefit of, a person or entity blocked pursuant to Executive Order 13224 signed on September 24, 2001 and entitled "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism" or under any rules or regulations promulgated thereunder (collectively, the "**Executive Order**") and (ii) it does not have any interest in any property blocked by the Executive Order. In the event that Sublandlord breaches its representations, warranties, or covenants made to Landlord in this Section, Landlord shall have all rights and remedies available to it under the Lease and all other rights and remedies available at law and in equity, including but not limited to forcible eviction, and, in the event that Subtenant breaches its representations, warranties, or covenants to Landlord made in this Section, Sublandlord and Subtenant agree that, upon Landlord's demand, the Sublease shall be immediately terminated, whereupon Sublandlord shall cause Subtenant to vacate the Sublet Premises and Sublandlord shall exercise, as necessary, all rights and remedies under the Sublease, and at law and in equity, including but not limited to forcible eviction. Sublandlord and Subtenant each hereby agrees to defend, indemnify and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities, fines, penalties, forfeitures and expenses (including costs and attorneys' fees) arising from or related to any breach on its part of the foregoing obligations under this Section.

12. Notice Addresses.

(a) <u>Landlord Notice Addresses.</u> Any notices to Landlord shall be effective when served to Landlord in accordance with the terms of the Lease at the following addresses:

Landlord:

BRE River North Point Owner LLC
c/o Equity Office
222 South Riverside Plaza
Suite 2000
Chicago, Illinois 60606
Attention: Asset Manager

With copies to:

BRE River North Point Owner LLC
c/o Equity Office
350 North Orleans Street
Chicago, Illinois 60654
Attention: Property Manager

and

Equity Office
222 South Riverside Plaza, Suite 2000
Chicago, Illinois 60606
Attention: Managing Counsel

(b) <u>Sublandlord Notice Addresses.</u> Any notices to Sublandlord shall be effective when served to Sublandlord in accordance with the terms of the Lease at the following addresses:

Sublandlord:

Rocket Fuel Inc.
1900 Seaport Boulevard
Redwood City, California 94063
Attention: CEO, Director of Real Estate & Facilities

With a copy of any notices whereby Landlord is notifying Sublandlord of a Sublandlord default under the Lease, or notifying Sublandlord of, or responding to Sublandlord with respect to, any option rights of Sublandlord under the Lease, or providing any notices other than routine notices concerning the operation of the Building, to:

Rocket Fuel Inc.
1900 Seaport Boulevard
Redwood City, California 94063
Attention: Office of the General Counsel

(c) <u>Subtenant Notice Addresses.</u> Any notices to Subtenant shall be effective when served to Sublandlord in accordance with the terms of the Lease at the following addresses:

Subtenant:

Nitel, Inc.
1101 W Lake Street

With a copy of any notices whereby Landlord is notifying Subtenant of a Subtenant and/or Sublandlord default under the Lease, or providing any notices other than routine notices concerning the operation of the Building, to:

Nitel, Inc.
1101 W. Lake Street

Chicago, Illinois 60607  Chicago, Illinois 60607
Attention: Ron Grason   Attention: General Counsel

13. Authority. Each of Landlord, Sublandlord and Subtenant represents hereby that its signatory to this Consent Agreement has the authority to execute and deliver the same on behalf of the party hereto for which such signatory is acting.

14. Counterparts. This Consent Agreement may be executed in counterparts and shall constitute an agreement binding on all parties notwithstanding that all parties are not signatories to the original or the same counterpart provided that all parties are furnished a copy or copies thereof reflecting the signature of all parties. Transmission of a facsimile or by email of a pdf copy of the signed counterpart of this Consent Agreement shall be deemed the equivalent of the delivery of the original, and any party so delivering a facsimile or pdf copy of the signed counterpart of this Consent Agreement by email transmission shall in all events deliver to the other party an original signature promptly upon request.

[SIGNATURES ARE ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Landlord, Sublandlord and Subtenant have executed this Consent Agreement under seal in two or more counterparts as of the date set forth above.

**LANDLORD:**

**BRE RIVER NORTH POINT OWNER LLC, a Delaware limited liability company**

By: _____

Name: Ronald Miles

Title: VP-Asset Management

**SUBLANDLORD:**

**ROCKET FUEL INC., a Delaware corporation**

By: _____

Name: JOANN COVINGTON

Title: GENERAL COUNSEL

**SUBTENANT:**

**NITEL, INC., an Illinois corporation**

By: _____

Name: PAUL RIOS

Title: GENERAL COUNSEL

# EXHIBIT A

# SUBLEASE AGREEMENT